# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARYLAND DIGITAL COPIER d/b/a
SHORT TERM COPIER,

        *Plaintiff,*

v.

LITIGATION LOGISTICS, INC.,

        *Defendant.*

Civil Action No. 18-2027 (TJK)

## <u>MEMORANDUM OPINION AND ORDER</u>

Short Term Copier, as its name suggests, leases copiers, printers, and other office equipment for short-term projects. It also provides support services for that equipment over the course of the project. In later 2017 and early 2018, Short Term Copier provided equipment and associated services to Litigation Logistics, a litigation support firm, for two law-firm clients with trials taking place in the District of Columbia and California. After the projects were completed and Short Term Copier sent invoices for the equipment and services, Litigation Logistics declined to pay. Seeking what it alleges Litigation Logistics still owes it, Short Term Copier sued, bringing claims for breach of contract and, alternatively, unjust enrichment.

Litigation Logistics moved to dismiss, arguing that this Court lacks subject-matter jurisdiction to hear these claims in light of the District of Columbia's "door-closing" statute, that the Court cannot exercise personal jurisdiction over it, and that venue is improper. Finding each argument wanting, the Court will deny Defendant's motion, except insofar as it requests dismissal of claims related to the California contract between the parties for lack of personal jurisdiction.

## I.    Background

Maryland Digital Copier, Inc., d/b/a Short Term Copier ("Plaintiff") is a rental-services firm that provides high-speed copiers, printers, high-capacity shredders, laptops, and computers for temporary offices, projects, and events. *See* ECF No. 1 ("Compl.") ¶ 1. Plaintiff is a Maryland corporation, with its principal place of business in Maryland. *Id.* But it provides its services in nineteen states and in the District of Columbia. *Id.*

Litigation Logistics, Inc., ("Defendant") is a Tennessee corporation with its principal place of business in Tennessee. ECF No. 7-2 ("Hogan Decl.") ¶ 2. Its "primary business function . . . is to provide litigation support services to large law firms during their litigation matters that occur across the United States." *Id.* ¶ 3. Often, that entails setting up office locations near courthouses "equipped with computers, monitors, printers, copiers," and the like. *Id.* ¶ 4.

According to Plaintiff's complaint, in December 2017, Plaintiff entered into two agreements with Defendant to "provide copiers, printers, and other support to [Defendant's] law firm clients" for projects in the District of Columbia and California. Compl. ¶ 5. For the project in the District of Columbia—a trial expected to last four months—Plaintiff provided monitors, printers, copiers, and associated hardware and software and responded to service calls and delivered additional equipment as needed. *Id.* ¶¶ 6–7. Plaintiff provided similar equipment and services for the project in California in early 2018. *See id.* ¶¶ 10–11. According to Plaintiff, $80,747.27 and $6,540.00 remain outstanding on its invoices for the District of Columbia and California projects, respectively. *Id.* ¶¶ 9, 12.

In August 2018, Plaintiff commenced this action, bringing a claim of common-law breach of contract or, in the alternative, unjust enrichment to recover the unpaid amounts on the two contracts. *See id.* ¶¶ 14–26. The complaint invokes this Court's diversity jurisdiction under

28 U.S.C. § 1332(a)(1), noting that Plaintiff seeks more than $75,000 and that the parties are incorporated in and have their principal places of business in different states. *Id.* ¶ 3.

Defendant moved to dismiss the complaint, contending that subject-matter jurisdiction, personal jurisdiction, and proper venue are all lacking, *see* ECF No. 7-1 ("Def.'s MTD Br."), which Plaintiff opposed, *see* ECF No. 8-1 ("Pl.'s Opp'n").

## II. Legal Standard

### A. Subject-Matter Jurisdiction

A motion to dismiss a complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). When faced with such a motion, a court may look beyond the pleadings, but it must "accept all of the factual allegations in [the] complaint as true," *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253– 54 (D.C. Cir. 2005) (alteration in original) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)), and otherwise "construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Still, the plaintiff "bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction." *Whiteru v. Wash. Metro. Area Transit Auth.*, 258 F. Supp. 3d 175, 182 (D.D.C. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

### B. Personal Jurisdiction

A defendant may also, under Rule 12(b)(2), move to dismiss a complaint because the court lacks personal jurisdiction over it. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of establishing a court's personal jurisdiction over the defendant, *see FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008), at this stage by making a "*prima facie*

showing of the pertinent jurisdictional facts," *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (quoting *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). When, as here, the court determines personal jurisdiction without an evidentiary hearing, the "court must resolve factual disputes in favor of the plaintiff." *Id.* at 57 (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). But it "need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts." *Id.* (quoting *Helmer*, 393 F.3d at 209). As is the case in determining subject-matter jurisdiction, "the Court is not limited to the four corners of the operative complaint, [and] 'may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts.'" *Xie v. Sklover & Co., LLC*, 260 F. Supp. 3d 30, 37 (D.D.C. 2017) (quoting *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 26 (D.D.C. 2012)).

### C.     Venue

Finally, a party may challenge venue under Rule 12(b)(3), and if the court determines that venue is improper, it must dismiss the action or, if it is in the interest of justice, transfer it to a proper venue. *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor[,] and resolves any factual conflicts in the plaintiff's favor." *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009). And the court may consider materials outside the pleadings. *See Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011). Ultimately, "[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).

Even if a court determines that venue is proper in its district, however, it may still transfer the case "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other

district or division where it might have been brought." 28 U.S.C. § 1404(a). A party moving for transfer under § 1404(a) must show both that the action could have been brought in the transferee district and that the applicable factors weigh in favor of transfer. *See, e.g.*, *Treppel v. Reason*, 793 F. Supp. 2d 429, 435 (D.D.C. 2011). That burden is a heavy one, particularly in light of the strong weight a plaintiff's choice of forum is generally afforded. *See Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155–56 (D.D.C. 2018); *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955). And the court has "broad discretion" in determining whether transfer is appropriate under this standard. *Rosales v. United States*, 477 F. Supp. 2d 213, 215 (D.D.C. 2007) (quoting *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983)).

## III. Analysis

Defendant makes three arguments in support of its motion to dismiss. First, it argues that the District of Columbia's "door-closing" statute, D.C. Code § 29-105.02(b), deprives this Court of subject-matter jurisdiction over Plaintiff's claims. Second, Defendant asserts that its relevant contacts with the District of Columbia are insufficient for this Court to exercise personal jurisdiction over it. Third, and relatedly, it claims that venue is improper here. In the alternative, if the Court finds that venue is proper in this district, Defendant requests that the Court transfer the action to the Middle District of Tennessee. The Court addresses each argument in turn.

### A. District of Columbia's Door-Closing Statute

Defendant claims that the Court lacks subject-matter jurisdiction to hear any of Plaintiff's claims because Plaintiff is barred from bringing this action by the District of Columbia's door-closing statute, D.C. Code § 29-105.02(b). *See* Def.'s MTD Br. at 7–9; ECF No. 9 ("Def.'s Reply") at 1–6. That provision states that a "foreign filing entity . . . doing business in the District may not maintain an action or proceeding in the District unless it is registered to do business in the District." And Defendant insists that Plaintiff, which is not registered with the

District of Columbia, has nevertheless been "doing business" here and is therefore barred from bringing suit.

Plaintiff points out, however, that the statute provides an exception for businesses engaged in "interstate commerce." *See* Pl.'s Opp'n at 12. Specifically, the statute states that a foreign entity "shall not be considered to be doing business in the District . . . solely by reason of carrying on in the District" a list of enumerated activities, including "[d]oing business in interstate commerce." D.C. Code § 29-105.05(a). Providing services from one state to another—here, from Plaintiff's offices in Maryland to the project site in the District of Columbia—is paradigmatic interstate commerce, Plaintiff contends. *See* Pl.'s Opp'n at 12–13. It thus maintains that it did not have to register with the District of Columbia in order to sue.

The D.C. Circuit has instructed that a federal court sitting in diversity "must apply the District's door closing statute." *Tel. & Data Sys., Inc. v. Am. Cellular Network Corp.*, 966 F.2d 696, 699 (D.C. Cir. 1992) (per curiam); *see also Landmark Health Solutions, LLC v. Not For Profit Hosp. Corp.*, 950 F. Supp. 2d 130, 134 (D.D.C. 2013). Indeed, this requirement functions as a jurisdictional bar, depriving the court of subject-matter jurisdiction over claims made by an entity that fails to comply. *See Tel. & Data Sys.*, 966 F.2d at 699; *see also Kennedy v. City First Bank of D.C., N.A.*, 88 A.3d 142, 144–45 & n. (D.C. 2014) (describing section 29-105.02(b) as a jurisdictional prerequisite). Accordingly, if the registration requirement applies to Plaintiff, the Court must dismiss Plaintiff's claims.

As noted, section 29-105.02(b) prohibits any "foreign filing entity" doing business in the District of Columbia from maintaining an action in District of Columbia courts unless it registers to do business here. The statute defines "'foreign,' with respect to an entity, [to] mean an entity governed as to its internal affairs by the law of a jurisdiction other than the District." D.C. Code

§ 29-101.02(14). Plaintiff, incorporated under the laws of Maryland, undoubtedly falls within that definition, and Plaintiff makes no representation that it is registered with the District.

All the same, the Court agrees that Plaintiff's activity in the District of Columbia is no more than interstate commerce. The statute does not define "interstate commerce." And it does not appear that the D.C. Court of Appeals has had much occasion to consider the contours of the exception. *See Hargrove Displays, Inc. v. Rohe Sci. Corp.*, 316 A.2d 330 (D.C. 1974) (finding, with only brief analysis, that a similar exception in a prior iteration of the District's door-closing statute includes the shipment of goods from an out-of-state provider to a District of Columbia purchaser, even if the sale was solicited and consummated within the District).

In any event, the Court finds that Plaintiff's conduct fell within any ordinary understanding of the term. Plaintiff operates an equipment rental and servicing business across nineteen states from its two offices in Maryland and Florida. *See* Pl.'s Opp'n at 13; ECF No. 8-3 ("Miller Decl.") ¶¶ 3–4. And the only instances in this record of its commercial activities in the District of Columbia are those involving its performance on the District of Columbia contract— where Plaintiff delivered equipment to the District of Columbia and provided services from its office in Maryland. *See* Compl. ¶¶ 6–7; Miller Decl. ¶¶ 8–9. The provision of goods and services across state lines is a fundamental form of interstate commerce. *See Champion v. Ames*, 188 U.S. 321, 345 (1903); *Gloucester Ferry Co. v. Pennsylvania*, 114 U.S. 196, 203 (1885); *see also Aspire Channel, LLC v. Penngood, LLC*, 139 F. Supp. 3d 382, 386–87 (D.D.C. 2015) (concluding, based on the interstate-commerce exception, that a plaintiff corporation providing a video programming service to viewers in the District of Columbia and elsewhere from out of state was not barred from bringing a breach of contract claim in the District to recover on unpaid advertising spots).

Furthermore, this conclusion inevitably follows from the origins of the interstate commerce exception. States have long employed similar door-closing statutes as a mechanism to better facilitate state supervision of entities conducting business within their borders. *See, e.g.*, *Union Brokerage Co. v. Jensen*, 322 U.S. 202, 210 (1944) (discussing a similar statute in Minnesota); *see also S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1511–13 (11th Cir. 1990) (surveying cases addressing state forum-closing statutes). But the Supreme Court has made clear that those provisions, when applied to interstate commerce, run the risk of being an impermissible burden under the Commerce Clause. *See, e.g.*, *Union Brokerage*, 322 U.S. at 209–210; *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 32–34 (1974). Indeed, the D.C. Court of Appeals, interpreting an earlier version of the District's door-closing statute, has acknowledged as much and construed the statute's interstate-commerce exception to comport with those limitations. *See Hargrove*, 316 A.2d at 331. Likewise, the current door-closing statute emphasizes that the non-exclusive list of what does *not* constitute "doing business" in the District, including conducting interstate commerce, should not be read to the exclusion of "other activities that do not have the [necessary] intra-District presence." D.C. Code § 25-105.05(a). And thus even though Plaintiff has not made a constitutional argument in opposing Defendant's motion, the Court still finds the Supreme Court's Commerce Clause jurisprudence, set forth below, instructive.

In assessing whether a state's door-closing statute unduly burdens interstate commerce, the key question is whether a foreign corporation has "localized its business" in the forum state. *Allenberg Cotton*, 419 U.S. at 32–33. Relevant considerations include the "permanence and scope of the relationships between the foreign corporation and the forum state" and "whether the intrastate transaction is an essential element of an interstate transaction." *S & H Contractors*,

906 F.2d at 1511. Applied here, those considerations only confirm that Plaintiff's activity in the District of Columbia constituted "interstate commerce" as that term is employed in the District's door-closing statute. Plaintiffs entered the district solely for the interstate provision of rental equipment and services. Though the project lasted for several months, nothing in the record indicates that this was anything more than the conclusion of a "unitary interstate transaction." *Allenberg Cotton*, 419 U.S. at 33 (quoting *Union Brokerage*, 322 U.S. at 211). Plaintiff has no physical office here nor any other form of continuous presence. *Cf. Eli Lilly & Co. v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 280–81 (finding a pharmaceutical company to be engaged in intrastate business when it employed an office in the forum state of 18 representatives regularly trying to sell the company's products to forum-state residents). Its activity in the District of Columbia was, for all relevant purposes, "solely . . . [d]oing business in interstate commerce." D.C. Code § 29-105.05.

For these reasons, the Court finds that Plaintiff is not subject to the District of Columbia's door-closing statute and that it has subject-matter jurisdiction to hear Plaintiff's claims.

### B. Personal Jurisdiction

Defendant also argues that this Court lacks personal jurisdiction over it. *See* Def.'s MTD Br. at 3–7. It avers that it does not have the continuous and systematic presence here necessary for this Court, as a general matter, to subject it to its jurisdiction. *See id.* at 6–7. And it further maintains that its alleged contacts with the District of Columbia specific to this action are insufficient for this Court to exercise personal jurisdiction over it for purposes of Plaintiff's claims here. *See id.* at 3–6. Rather, Defendant insists that most of the conduct relevant to Plaintiff's breach of contract and unjust enrichment claims occurred outside this district, particularly in Maryland and Tennessee, where the two businesses are located. *See id.* at 5–6.

Plaintiff seeks damages based on two alleged contracts it entered into with Defendant—one about a District of Columbia project, and the other a project in Concord, California. Though Plaintiff combines these claims into single counts for breach of contract or, alternatively, unjust enrichment, *see* Compl. ¶¶ 14–19; *id.* ¶¶ 20–26, for purposes of determining whether the Court may exercise personal jurisdiction over Defendant to hear Plaintiff's claims, the Court addresses Plaintiff's request for damages stemming from the two contracts separately.

### 1. District of Columbia Contract

Plaintiff disputes Defendant's characterization of its contacts with the District of Columbia, particularly with regard to Defendant's conduct specific to the District of Columbia contract at issue here. It points out that the very object of that contract was the provision of equipment and services for a project "*in the District of Columbia*." Pl.'s Opp'n at 9. Though it acknowledges that some aspects of the contract negotiation and formation likely occurred in other states, the performance of the contract, including interactions between the parties over the course of the project, took place here. *Id.* at 8–10. And it specifically emphasizes that Defendant "voluntarily and deliberately" established contacts with the District of Columbia when it agreed to set up an office here for its client and sought Plaintiff's assistance in equipping it. *Id.* at 8. Those facts, Plaintiff insists, are sufficient for this Court to exercise jurisdiction over Defendant for purposes of the claims here. For Plaintiff's claims arising from the District of Columbia contract, the Court agrees.

A federal court ordinarily must look to the law of the forum state to "determin[e] the bounds if [its] jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). That entails a two-step process—namely, ensuring that the forum state would authorize its courts to exercise jurisdiction over the defendant to hear the

claims made against it and, if so, whether doing so comports with the limits imposed by federal due process. *See Forras v. Rauf*, 812 F.3d 1102, 1105–06 (D.C. Cir. 2016).

The District of Columbia's long-arm statute authorizes local courts to exercise jurisdiction over a non-resident defendant "as to claims for relief arising from" certain of the defendant's contacts with the forum. D.C. Code § 13-423. That section of the statute addresses what is commonly called the exercise of "specific" jurisdiction, which focuses on the conduct of the defendant that gave rise to the claim and its relationship to the forum state. *See Daimler*, 571 U.S. at 127; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945). Plaintiff relies exclusively on section 13-423(a)(1), which provides that a District of Columbia court may exercise personal jurisdiction over a defendant to hear claims arising from the defendant's "transacting any business in the District of Columbia." *See* Pl.'s Opp'n at 5. Because that provision has been held to be coextensive with the limits of Constitutional due process, however, the ordinary two-step analysis collapses, and the Court need only determine whether exercising jurisdiction over Defendant to hear the claims brought here would be consistent with the requirements of the Due Process Clause. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987) (citing *Mouzavires v. Baxter*, 434 A.2d 988, 990–92 (D.C. 1981) (en banc)).

Due process requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Though physical presence in the state is not required, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), the defendant's contacts must "have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,'" *Asahi Metal Indus. Co.,*

*Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475). In other words, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980).

Defendant's conduct giving rise to Plaintiff's claims for damages stemming from the District of Columbia project meets that standard. As Plaintiff alleges in its complaint, Defendant contracted with Plaintiff for the provision of equipment and services for a project in the District of Columbia. *See* Compl. ¶¶ 6–7; *see also* Miller Decl. ¶ 5. The agreement, according to Plaintiff, specifically required Plaintiff to deliver equipment, including "monitors, printers, copiers, and all associated hardware and software to [Defendant's] client in Washington, D.C." Compl. ¶ 6; *see also* Miller Decl. ¶ 5. Defendant admits that it was physically present in the District of Columbia over the course of that project. *See* Def.'s MTD Br. at 5. And over the course of performing under the contract, Plaintiff delivered additional equipment to Defendant's client in the District of Columbia and responded to service calls here, all the while continuing to communicate with Defendant "*in the District of Columbia*" from Plaintiff's Maryland offices. Miller Decl. ¶¶ 8–9 (emphasis added); *see also* Compl. ¶ 7.

Entering into a contract "to be performed, in whole or in part, in [the District of Columbia]," has often been held to constitute the purposeful availment necessary to establish "minimum contacts" with the forum. *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 7 & n.4 (D.D.C. 2009); *see also Schwartz v. CDI Japan, Ltd.*, 938 F. Supp. 1, 6 (D.D.C. 1996) ("Where a non-resident has solicited the business relationship and the contract calls for the performance of work within the District [of Columbia], the court may find that the transaction has such a substantial connection with the District such that the exercise of personal

jurisdiction is permissible."). And that makes sense, because the touchstone of personal

jurisdiction is the reasonable expectation that a person might be sued in a particular forum. *See*

*Burger King*, 471 U.S. at 474; *see also World-Wide Volkswagen*, 444 U.S. at 297 ("The Due

Process Clause . . . gives a degree of predictability to the legal system that allows potential

defendants to structure their primary conduct with some minimum assurance as to where that

conduct will and will not render them liable to suit."). When parties negotiate a contract where

performance is to occur in a particular forum, they harbor that expectation.[1]

Here, the express object of Defendant's agreement was that Plaintiff would perform—

*i.e.*, deliver and service equipment—*in the District of Columbia*. And Defendant was present in

and continued to communicate with Plaintiff *in the District of Columbia* over the course of that

performance. *See* Miller Decl. ¶ 8; Def.'s MTD Br. at 5. It is hard to imagine more purposeful

contacts with this forum. Plaintiff's claims for contract damages do not arise from some

"'random,' 'fortuitous,' or 'attenuated' contacts" by Defendant with the District of Columbia.

*Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49 (D.D.C. 1994) (quoting *Burger*

*King*, 471 U.S. at 480). The place of performance, for example, was not indeterminate at the

---

[1] Defendant in its reply argues that Plaintiff's explanations for why this Court has both personal and subject-matter jurisdiction are contradictory. *See* Def.'s Reply at 5–6. As an initial matter, the doing-business requirement concerns *Plaintiff's* activity within the District of Columbia, while the bounds of this Court's personal jurisdiction depend on *Defendant's* contacts with the District. To be sure, these two determinations will often overlap, particularly when the relevant conduct involves a contractual relationship between the two parties. But the finding of one is not mutually exclusive with the finding of the other. The minimum-contacts requirement is ultimately grounded in the defendant's reasonable expectations, and thus it tolerates a looser association with forum state than is necessary to warrant imposing registration requirements and still comport with the Commerce Clause. Indeed, the District's door-closing statute implicitly acknowledges as much, stating that the contours of the doing-business requirement should not be used to determine, among other things, the bounds of personal jurisdiction. *See* D.C. Code § 29-105.05(b).

time of contracting, *see Brunson v. Kalil & Co., Inc.*, 404 F. Supp. 2d 221, 232 (D.D.C. 2005), nor was the alleged harm suffered by Plaintiff the result of some unforeseeable, downstream effect of the contract, *see, e.g.*, *World-Wide Volkswagen*, 444 U.S. at 297. The parties had every intention for Plaintiff to perform in the District of Columbia, Plaintiff in fact did so, and Plaintiff now seeks payment for that performance as allegedly promised under the agreement. Thus, the Court has little trouble concluding that Defendant has the requisite "minimum contacts" with this forum under the District of Columbia's long-arm statute and the Due Process Clause.

In arguing otherwise, Defendant fails to grapple directly with Plaintiff's allegations affirmatively linking it with the District of Columbia. It points out that neither Defendant nor Plaintiff is a resident of the District of Columbia, but that says nothing of whether any relevant *conduct* occurred or *effect* was felt here. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80 (1984) (noting that the *plaintiff* need not be a resident of or have minimum contacts with the forum state for a court to exercise personal jurisdiction over the defendant based on its conduct there). And it emphasizes that the negotiation and formation of the contract occurred in Maryland and Tennessee. While that conduct can be relevant to determining whether personal jurisdiction exists, *see Thompson Hine, LLP v. Smoking Everywhere Inc.*, 840 F. Supp. 2d 138, 142–43 (D.D.C. 2012), Defendant overlooks the parties' agreement that Plaintiff would perform in the District of Columbia, a crucial factor in determining whether a contract is substantially connected to a forum, *see Helmer*, 393 F.3d at 206, as well as Defendant's presence in the District and continuing communications with Plaintiff over the course of Plaintiff's performance. Indeed, Defendant appears to assume that personal jurisdiction is a zero-sum game—that only one court may have personal jurisdiction over a party in a given situation. But the key question in determining personal jurisdiction here is not whether more of the relevant conduct occurred

elsewhere—although the Court rejects that contention in examining venue below—but rather whether enough of that conduct occurred in or affected the District of Columbia.

Defendant also tries to minimize its connection to the forum by asserting that *its* relevant business conduct largely occurred outside the District of Columbia, because it negotiated and formed the contract from its headquarters in Tennessee. *See* Def.'s MTD Br. at 5. To be sure, "[a] plaintiff may not . . . depend upon his own activity to establish the existence of minimum contacts." *COMAST Corp. v. Finshipyards S.A.M.*, 900 F. Supp. 515, 522 (D.D.C. 1995) (omission in original) (quoting *Reiman v. First Union Real Estate Equity & Mortg. Invs.*, 614 F. Supp. 255, 257 (D.D.C. 1985)). It is the *defendant's* conduct that is relevant for purposes of establishing personal jurisdiction over it. The D.C. Circuit has made clear, for example, that preparatory actions by an in-state plaintiff in anticipation of performing on a contract with a defendant in a foreign forum generally cannot, on their own, constitute the minimum contacts necessary to hale that defendant into court in the state where that preparation took place. *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1194 (D.C. Cir. 2013). But Defendant contracted with Plaintiff to provide the equipment and services in the District of Columbia and, according to Plaintiff, promised to pay Plaintiff for that performance. And those actions by Plaintiff were not merely ancillary or preliminary; they were the very point of the contract in the first place.[2]

---

[2] Defendant also makes the passing claim in its motion, at the end of its argument on specific jurisdiction, that exercising personal jurisdiction over it "would not be constitutionally reasonable." Def.'s MTD Br. at 6. Though it is not entirely clear what Defendant means by that statement, the Court assumes it is appealing to the Supreme Court's instruction that even when a defendant has established minimum contacts with a forum state, exercising jurisdiction over it may still run afoul of traditional notions of "fair play and substantial justice." *See Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). But Defendant appeals to none of the relevant factors highlighted in *Burger King*, instead merely repeating that none of Defendant's actions "are substantially related to the District of Columbia." Def.'s MTD Br. at 6. For the reasons explained, the Court disagrees. Furthermore, to the extent Defendant is claiming that

At bottom, the Court finds—based on Defendant's contracting with Plaintiff to provide equipment and services in the District of Columbia to Defendant's client, the fact that Plaintiff now seeks recovery for that performance, Defendant's presence in the District of Columbia over the course of the contract, and Plaintiff's communications with Defendant in the District of Columbia—that exercising jurisdiction over Defendant for Plaintiff's claims for breach of contract and unjust enrichment stemming from performance of the District of Columbia contract comports with the limitations of D.C. Code § 13-423(a)(1) and the Due Process Clause.

### 2. Concord, California Contract

Also included in Plaintiff's two claims for breach of contract and unjust enrichment is a demand for recovery on a contract to provide equipment and services to one of Defendant's clients in Concord, California. *See* Compl. ¶¶ 10–12. By Plaintiff's own account, this is a separate contract, involving a separate project, which occurred across the country in a different state. *See id.* ¶¶ 10–11. Indeed, Plaintiff sent Defendant separate invoices for the equipment and services provided, totaling $6,540, which Plaintiff now claims as damages. *Id.* ¶¶ 11–12, 19, 25. Yet Plaintiff makes no attempt to link this agreement to Defendant's contacts with the District of Columbia beyond the fact that it concerned similar services and was formed between the same two parties.

Both D.C. Code § 13-423 and the Due Process Clause require that the defendant's contacts with the forum state have a connection to the underlying controversy. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781–82 (2017); *Forras*, 812 F.3d

---

subjecting it to jurisdiction would be unreasonable due to the burden placed on it in having to defend the suit here, that concern is adequately addressed by Defendant's request for transfer of venue. *See Burger King*, 471 U.S. at 477 (noting that a claim of substantial inconvenience can be better addressed by a change of venue rather than a motion to dismiss for lack of personal jurisdiction).

at 1106.  The proper standard for determining relatedness, however, is an open question in this Circuit.  *See Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 26–27 (D.D.C. 2017). While some courts require a causal relationship between the defendant's contacts with the forum and the plaintiff's claims, *see id.* at 26, other courts, including the D.C. Court of Appeals, take a more forgiving, totality-of-the-circumstances approach that focuses on whether the exercise of jurisdiction by a court in the forum state was "reasonably foreseeable," *see Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 334–36 (D.C. 2000) (en banc).

At least two judges in this district, however, have concluded that the latter approach— often termed the "discernible relationship" test—is incompatible with existing Supreme Court precedent interpreting the limits of the Due Process Clause.  *See Triple Up*, 235 F. Supp. 3d at 27; *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 177 (D.D.C. 2018). For the reasons they articulate, this Court agrees.  Relaxing the requisite connection between the defendant's conduct giving rise to the suit and the forum state because of the defendant's repeated but unrelated contacts with that forum would impermissibly "blur[] the distinction between specific and general jurisdiction."  *See Triple Up*, 235 F. Supp. 3d at 27.  The Supreme Court's recent decision in *Bristol-Myers*, in which it rejects California's "sliding scale" approach to specific jurisdiction, only reinforces this point.  *See* 137 S. Ct. at 1781.  Moreover, hinging the exercise of jurisdiction on a loose and indefinite combination of factors runs contrary to the very purpose of the Due Process Clause—namely, to provide defendants adequate notice of where they might be sued.  *See Triple Up*, 235 F. Supp. 3d at 27.[3]

---

[3] Even though the discernible relationship test appears to still be the operative test in District of Columbia courts, for purpose of interpreting the limits imposed by the Due Process Clause, as opposed to the District of Columbia's long-arm statute, that case law is not controlling.

That leaves the approaches, adopted by many federal courts, that require at least some causal connection between the defendant's contacts with the district and the plaintiff's injury. *See Triple Up*, 235 F. Supp. 3d at 26 (collecting cases).  Whether that relationship must amount to proximate causation or merely resemble but-for causation is also unsettled, *id.*, but the Court need not answer that question for purposes of this case.  Plaintiff has alleged *no* causal relationship between Defendant's contacts with the District of Columbia and its failure to pay Plaintiff for the work it performed in California.  According to the complaint, the California contract was a separate agreement, negotiated and formed apart from the District of Columbia contract, governing the provision of equipment and services in California.  *See* Compl. ¶¶ 10–11; *see also* Pl.'s Opp'n at 3.  None of the contacts linking Defendant to the District of Columbia— the formation of the District of Columbia contract, Defendant's presence here connected to that contract, Plaintiff's communications with Defendant here about that contract, and Defendant's failure to pay Plaintiff for the work it performed in the District of Columbia—appear to have any causal relationship to Defendant's alleged breach of the *California* contract.

The Court therefore concludes that it cannot exercise personal jurisdiction over Defendant to hear Plaintiff's claims for damages arising from its agreement with Defendant regarding the Concord, California client, and that claim will thus be dismissed.

## C.    Venue

Defendant also challenges venue, resting on similar arguments underlying its claim that the Court lacks personal jurisdiction.  But the applicable venue statute, 28 U.S.C. § 1391, provides that venue is appropriate for a suit against a corporate defendant in any district in which that defendant is subject to the court's personal jurisdiction.  *See* 28 U.S.C. § 1391(b)(1), (c)(2); *see also Aguilar v. Michael & Son Servs., Inc.*, 292 F. Supp. 3d 5, 10 (D.D.C. 2017). Accordingly, because the Court has already concluded that it may exercise jurisdiction over

Defendant to hear Plaintiff's claims stemming from the District of Columbia contract, venue is proper here for those claims as well.

Even if venue is proper, however, Defendant requests transfer to the Middle District of Tennessee. *See* Def.'s MTD Br. at 11–13. It argues that having to defend against this lawsuit in this district would be unduly burdensome given its headquarters in Tennessee, contending that Plaintiff could travel more easily because it does business across nineteen states. *Id.* at 12. And it reiterates that it has "minimal contact with the District of Columbia," and none beyond the "specific litigation trial work project" at issue here. *Id.* at 12–13.

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). In considering whether transfer is appropriate, courts take into account a collection of private and public interests: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; (6) the ease of access to the sources of proof; (7) the local interest in making local decisions regarding local controversies; (8) the relative congestion of the transferee and transferor courts; and (9) the potential transferee court's familiarity with the governing law. *W. Watersheds Project v. Tidwell*, 306 F. Supp. 3d 350, 356 (D.D.C. 2017). Upon review of these considerations, the Court concludes that Defendant has not met its burden to demonstrate that the Court should transfer the case.

To begin with, there is no doubt this case could have been brought in the Middle District of Tennessee. Defendant is a Tennessee corporation with its principal place of business in that district, *see* Hogan Decl. ¶ 2, and thus venue is proper there under 28 U.S.C. § 1391(b).

Turning to the applicable factors, however, Defendant's insistence that transfer is warranted rests again on its mischaracterization of the relevant conduct. It contends that the parties' dispute arises from a business transaction largely conducted between Tennessee and Maryland, and between a Tennessee company and a Maryland company. *See* Def.'s MTD Br. at 4–5, 10; Def.'s Reply at 6–7. But as the Court made clear in assessing personal jurisdiction, Plaintiff's claims have strong ties to the District of Columbia. The contract governed work to be done here, both Defendant and Plaintiff entered the District of Columbia in relation to the contract during the relevant period, and, crucially, the performance for which Plaintiff now seeks compensation was in fact performed here.

As to each court's familiarity with the applicable law, it is not clear yet which state's law should govern Plaintiff's breach of contract and unjust enrichment claims. Indeed, if the parties dispute which state's law should govern, either this Court or the transferee court would need to employ their forum state's choice-of-law framework, a task for which both are equally equipped. *See, e.g.*, *PCH Mut. Ins. Co., Inc. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67, 72–73 (D.D.C. 2008). And thus this factor, at least at this time, is of little help in deciding whether to transfer. Moreover, at this preliminary stage, the record suggests that the District of Columbia may have a stronger stake in the controversy. The parties' dispute is largely interstate in nature, but, as noted, it has strong ties to the District of Columbia. On the other hand, Defendant has made no specific representations, beyond the fact that it is headquartered in Tennessee, showing that the Middle District of Tennessee would have an equally strong interest in resolving Plaintiff's claims.

Defendant does point to the burden it will face if it must defend this suit in the District of Columbia, as opposed to the Middle District of Tennessee where it is located. Def.'s MTD Br. at

12. The Court does not dispute that Defendant will face additional expense if required to litigate this case here. But Plaintiff would face comparable burden if forced to pursue its claims in Tennessee, where it represents that it has no offices or personnel. *See* Miller Decl. ¶ 11. Defendant suggests that, given Plaintiff's interstate business, it would be *relatively* less inconvenienced. *See* Def.'s MTD Br. at 12. The Court is somewhat skeptical of this assertion, especially given that Defendant too appeared to be serving clients as far away as California and Oregon. *See* Hogan Decl. ¶¶ 3, 7. But even assuming Defendant faces a greater relative burden in having to litigate the case here, that consideration would only marginally weigh in favor of transfer. Indeed, beyond its general protestations about the expense of having to travel to the District of Columbia, Defendant provides no detail about the projected expenses it expects to incur and the impact those expenses would have on it as a business. Nor does it identify any particular witnesses or proof that would be harder to present in this district than in the proposed transferee district.

With only Defendant's claim of inconvenience and desire to litigate in its home state weighing slightly in favor of transfer, the Court declines to exercise its discretion to transfer this case. The rest of the factors are either indeterminate or weigh against transfer.[4] And Defendant must make a strong showing to overcome the significant weight the Court must afford Plaintiff's choice to file its lawsuit here. *See Jalloh*, 300 F. Supp. 3d at 155–56. To be sure, the Court

---

[4] It is also worth noting that the civil caseload per active judge in the Middle District of Tennessee appears to be higher than the caseload per active judge in this district according to the most recent statistics. *See* United States Courts, Federal Judicial Caseload Statistics 2018 Tables, https://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables. While the Court does not find this factor particularly compelling or useful, *see United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 84 (D.D.C. 2011) (noting that general statistics provide little insight into the caseload of individual judges and do not account for the differences in the types of cases tried in different districts), if anything, it weighs slightly against transfer.

gives Plaintiff's choice of forum less deference than usual given that Plaintiff is not a District of Columbia resident. *See Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002). But even then, the Court finds that Defendant has fallen short of its burden. For these reasons, Defendant's motion in the alternative to transfer the case will be denied.

### D. Motion to Withdraw

As a final matter, the Court briefly addresses Defendant's counsel's pending motion to withdraw. *See* ECF No. 13. The Court previously advised Defendant that, as a corporation, it cannot proceed *pro se* and instructed Defendant and Defendant's counsel to file a status report addressing, among other things, Defendant's efforts to secure new counsel. *See* Minute Order of April 18, 2019. Defendant indicated that it had made no efforts to do so. *See* ECF No. 14 at 4.

Because this litigation will continue in light of the Court's resolution of Defendant's motion to dismiss or to transfer, and further because the Court is inclined to grant counsel's motion to withdraw, the Court will order Defendant to submit a further status report in three weeks apprising the Court of its efforts to secure new counsel. Defendant is hereby advised that if, at that time, Defendant has not secured new counsel and makes no indication that it promptly will, and the Court then permits Defendant's current counsel to withdraw, Defendant may be found in default. *See Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998).

## IV. Conclusion & Order

For the above reasons, it is hereby **ORDERED** that Defendant's Motion to Dismiss or to Transfer Venue, ECF No. 7, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's claim for $6,540 in damages for breach of contract or, in the alternative, unjust enrichment based on the Concord, California agreement with Defendant is **DISMISSED** for lack of personal jurisdiction. Defendant's motion is **DENIED** as to all other claims for relief.

It is further **ORDERED** that Defendant shall, unless new counsel has entered his or her appearance before then, submit a status report by September 12, 2019, addressing its efforts to secure new counsel.

    **SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 22, 2019